# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMEY JACKSON,

                Plaintiff,

v.

DENNIS DEVALKENAERE, CARLOS RUTHERFORD, KEVIN KLEMSTINE, JAMES HUTCHINSON, SCOTT SCHMITZ, ERIK GULBRANDSON, and PATRICK PAJOT,

                Defendants.

Case No. 18-CV-446-JPS

**ORDER**

      Plaintiff, a prisoner proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #6). Plaintiff has been assessed and paid an initial partial filing fee of $1.43. 28 U.S.C. § 1915(b)(4).

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

      A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774

(7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal

conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's complaint is simple: he alleges that he was not afforded counsel during a police lineup after a probable cause determination had been made in his case, in violation of his right to counsel under the Sixth Amendment. Defendants are all officers of the Milwaukee Police Department ("MPD"). On May 28, 2014, Plaintiff was arrested on a warrant for attempted homicide. (Docket #1-2 at 2). The warrant issued because Plaintiff had allegedly engaged in a gun battle with another person, Sylvester Lewis ("Lewis"), and a nearby child was struck by a stray bullet. *See* (Docket #1-1 at 2). The child eventually died from her wounds.

After his arrest and booking at the Milwaukee County Jail, two MPD officers attempted to interview Plaintiff. *Id.* They read him his *Miranda* rights, he declined to speak without counsel present, and the interview ended there. *Id.* The next day, on May 29, 2014, one of the officers filed an affidavit concerning Plaintiff and the shooting incident with Milwaukee County Circuit Court commissioner Rosa Barillas ("Barillas"). *Id.* The detective sought a probable cause determination so as to justify Plaintiff's

continued detention. Barillas found probable cause to support the charged crimes—homicide and a probation violation—and set Plaintiff's bail at $250,000. *Id.* at 2–3.

On May 30, 2014, Defendants forced Plaintiff to participate in a lineup. *Id.* at 3. Plaintiff was not offered or afforded counsel during this process. *Id.* As will be explained further below, three witnesses to the shooting participated in the lineup and positively identified Plaintiff as Lewis' opponent in the shootout.

Plaintiff alleges that upon the probable cause determination by Barillas, his Sixth Amendment right to counsel attached, citing *Rothgery v. Gillespie County*, 554 U.S. 191 (2008). If this is true, says Plaintiff, it was unlawful for the police to force him to participate in a lineup without the assistance of counsel. *United States v. Wade*, 388 U.S. 218, 226 (1967); *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (the Sixth Amendment right to counsel guarantees the presence of counsel at "critical stages" such as "postindictment lineups").[1]

Plaintiff is correct that the right to counsel attaches once a criminal defendant undergoes the state's equivalent of an initial appearance—that is, whatever protocol or proceeding the state uses to apprise the defendant of the charges against him, to afford a neutral judicial officer a chance to make a probable cause determination, and, assuming probable cause is found, to afford the judicial officer an opportunity to make a bond

---

[1] Plaintiff does not allege that the lineup itself was unlawfully done; indeed, he says very little about what occurred during the lineup. Instead, this case is built upon whether he had a right to counsel during that proceeding. Notably, his criminal appeal, discussed further below, was entirely concerned with whether the lineup was done improperly. *State of Wisconsin v. Jamey Lamont Jackson*, Appeal No. 2017AP968-CR, 2018 WL 1175136, at *3 (Wis. Ct. App. Mar. 6, 2018).

determination. *Rothgery*, 554 U.S. at 199. Other branches of this Court have found that, under *Rothgery*, a Milwaukee County commissioner's signing a probable cause determination constitutes the initiation of a prosecution for purposes of the Sixth Amendment right to counsel, despite the fact that the defendant never actually appears before the commissioner. *United States v. West*, No. 08-CR-157, 2009 WL 5217976, at *9 (E.D. Wis. Mar. 3, 2009). The Court has no reason to quarrel with the sound reasoning of *West*, which has been followed by other branches of this Court. *United States v. Mitchell*, No. 15–CR–47, 2015 WL 5513075, at *4 (E.D. Wis. Sept. 17, 2015). Thus, it appears that Plaintiff should be permitted to proceed on his Sixth Amendment claim.

But there remains the matter of his state conviction to consider. Based on publicly available state court records, the Court has determined that the original two charges brought before Barillas on May 29, 2014—homicide and a probation violation—were amended on June 2, 2014 to a single charge of being a felon in possession of a firearm, apparently because it was determined that Lewis, not Plaintiff, fired the shot that killed the child. Plaintiff was ultimately convicted at trial of the felon-in-possession charge in Milwaukee County Circuit Court Case No. 2014CF2307. Plaintiff appealed, and the Wisconsin Court of Appeals affirmed the conviction and sentence in a recent order dated March 6, 2018. *State of Wisconsin v. Jamey Lamont Jackson*, Appeal No. 2017AP968-CR, 2018 WL 1175136 (Wis. Ct. App. Mar. 6, 2018).

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994), holds that a claim for damages under Section 1983 may not be pursued if its success would necessarily imply the invalidity of a criminal conviction or sentence. However, not every damages action is *Heck*-barred. As long as the plaintiff's

claims do not necessarily impugn the validity of his conviction or sentence, courts can entertain Section 1983 suits based on conduct that occurred during an investigation or prosecution. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). That is, where the plaintiff's success on the damages claim would not fatally undermine his conviction or sentence, the Section 1983 suit may proceed.

This situation most often arises with respect to claims challenging police investigative conduct under the Fourth Amendment, as it is often the case that an illegal arrest or unlawful use of force can be divorced from the ultimate conviction, thereby avoiding the *Heck* bar. *See Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998); *Simpson v. Rowan,* 73 F.3d 134, 136 (7th Cir. 1995). The interaction between *Heck* and the Sixth Amendment right to counsel is rarely litigated. Normally, the denial of counsel at a critical stage of a prosecution is a "structural error" that mandates reversal of the conviction without assessing whether the criminal defendant suffered any prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). If this was the rule to be applied in Plaintiff's case, his Section 1983 suit would be *Heck*-barred, since success on the claim would prove a structural error that would necessarily impugn the validity of his conviction.

Yet the Supreme Court has held that for post-indictment lineups, courts can query whether the denial of counsel was prejudicial. *Gilbert v. California*, 388 U.S. 263, 272 (1967). If the error was harmless—either because the tainted lineup evidence was never introduced or, if it was, it had no effect on the verdict—then the conviction may stand notwithstanding the violation of the defendant's Sixth Amendment rights. *Id.*; *Moore v. Illinois*, 434 U.S. 220, 232 (1977); *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)

(harmless error analysis applies "where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial").[2]

Because the harmless error rule may apply to the purported Sixth Amendment violation in this case, the Court concludes, at least for purposes of its preliminary review at screening, that Plaintiff's claim is not *Heck*-barred. Certainly, the lineup evidence was central to the state's case, as the three witnesses who participated in the lineup also testified at Plaintiff's trial. *Jackson*, 2018 WL 1175136, at \*1–\*2. But one must recall that

---

[2]The Supreme Court held in *Gilbert* that evidence from a lineup conducted without counsel present is subject to a *per se* exclusionary rule. *Gilbert*, 388 U.S. at 273. Admission of such evidence mandates reversal unless the government can prove the admission was harmless. *Id.* (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Similarly, as announced in *Wade*, even in-court identifications following an impermissible lineup are suspect, "because of the likelihood that the witnesses' in-court identifications were based on their observations of the defendant at the uncounseled lineup rather than at the scene of the crime." *Moore*, 434 U.S. at 225 (citing *Wade*, 388 U.S. at 240). In-court identifications can be admitted, but only if the prosecution can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *Wade*, 388 U.S. at 240.

These holdings have given rise to substantial confusion in the case law concerning the analysis of structural errors versus "trial" errors. *See United States v. Harbin*, 250 F.3d 532, 543–44 (7th Cir. 2001). Theoretically, the former can never be found harmless and must always lead to reversal of a conviction, but the latter will not result in reversal of a conviction unless there is a showing of prejudice. *Id.* The Court's approach to Sixth Amendment violations in *Cronic* suggests that denial of counsel at a critical stage is a structural, and therefore unforgivable, error. Yet in later decisions, including *Gilbert* and *Wade*, the Court found an admittedly structural error—the denial of counsel during a post-indictment lineup—was subject to some form of harmless error review. *See Ashford v. Gilmore*, 167 F.3d 1130, 1137 (7th Cir. 1999); *Moore,* 434 U.S. at 232. Because of the availability of harmless error review, it might be more sound doctrinally to stop calling this type of denial of counsel a structural error. Despite the mixed-up nomenclature, it appears that Plaintiff's alleged constitutional violation is not one that would necessarily undermine his conviction.

the *Heck* bar is limited to those Section 1983 claims that "necessarily" impugn the validity of the plaintiff's criminal conviction. Saying that the lineups were important to the prosecution's evidence is not the same thing as saying they were indispensable. Because it is possible that Plaintiff will be able to show that the alleged constitutional violation was harmless, the Court cannot dismiss the case at screening. *See Farrow v. Lipetzky*, Case No. 12-cv-06495-JCS, 2017 WL 1540637, at *14–15 (N.D. Cal. Apr. 28, 2017) (finding that *Heck* bar barred claim arising from denial of counsel at arraignment, but did not bar claim arising from delay in appointing counsel after right to counsel attached). For the reasons stated above, Plaintiff will be permitted to proceed on a claim against Defendants for violation of his Sixth Amendment right to counsel at the May 30, 2014 lineup. 28 U.S.C. § 1915A(b).

Two other matters are worth mention. First, as explained above, *Heck* will likely bar Plaintiff's claim for damages unless he can show that the wrongful admission of lineup evidence and in-court identifications was harmless—that is, it did not affect the jury's guilty verdict. But the better he succeeds in this task, the more he undermines the very claim he is trying to make. If the constitutional violation underlying this suit had little or no effect on his prosecution or conviction, then one might reasonably ask— what are his damages? Put differently, if the error in admission of this evidence does not impugn his conviction, then he was not wrongfully detained, prosecuted, or convicted. At best, he might receive a dollar in nominal damages for the police officers' oversight. *See Calhoun v. DeTella*, 319 F.3d 936, 941–42 (7th Cir. 2003). Yet for the present, this question need not be addressed further.

Second, this may be an appropriate case for the assertion of the defense of qualified immunity. Qualified immunity protects government officials from liability for damages under Section 1983 to the extent their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine the applicability of qualified immunity, a court must engage in a two-part analysis to determine: (1) whether the facts establish the violation of a constitutional right; and (2) whether the constitutional right at issue was "clearly established" at the time of the official's purportedly illegitimate conduct. *Id.* at 232; *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right,'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (citation omitted), based upon holdings in Circuit and Supreme Court decisions, *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000).

Here, an argument for qualified immunity might be made. *Rothgery* involved the defendant's appearance at a probable cause and bail hearing before a magistrate wherein the magistrate reviewed an affidavit from a police officer regarding the defendant's arrest. *Rothgery*, 554 U.S. at 196. As the district court in *West* observed, Milwaukee County's procedure is functionally identical to that challenged in *Rothgery*, save that arrestees in Milwaukee County, including Plaintiff, do not appear before the judicial officer while that person makes the probable cause and bond determinations. *West*, 2009 WL 5217976, at *8. Because of this factual distinction, can it be said that "every reasonable officer" would have known that Plaintiff's Sixth Amendment right had already attached by the time of

the lineup? *Reichle*, 566 U.S. at 664. Or, is it instead more likely that the officers reasonably believed that physical appearance before a judicial officer marked the start of the prosecution for Sixth Amendment purposes? Whatever the answer, this question is best left for appropriate adversarial development.[3]

In closing, while the Court finds that Plaintiff's Sixth Amendment claim may proceed past screening, it must nevertheless temporarily halt these proceedings. In his criminal case, Plaintiff recently filed a petition for discretionary review in the Wisconsin Supreme Court. That petition is still pending. The Court will abstain from hearing Plaintiff's damages claims while his criminal appeal is ongoing, pursuant to the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 53 (1971); *Simpson*, 73 F.3d at 137 ("[A]bsent extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings."). The Seventh Circuit has counseled that even when, as here, the criminal appeal and damages action raise distinct issues, a judgment on the convict's federal damages action before the conclusion of his direct appeal "might undermine the supreme court's consideration of [the convict's] constitutional defenses to his criminal conviction." *Simpson*, 73 F.3d at 138. As a result, the Court of Appeals instructs that district courts should abstain from hearing such claims "while the case works its way through the state appellate process." *Id.*

As a result, the Court must stay this action pending final disposition of Plaintiff's criminal proceedings. *Id.* at 139; *Wallace*, 549 U.S. at 393–94.

---

[3]It should be noted that the *Heck* problem, though thorny, has nothing to do with whether the officers knew at the time of the lineup that their conduct was unlawful. Thus, confusion there is no basis to award qualified immunity.

This matter will be administratively closed in the interim. Plaintiff must provide updates on the status of his criminal case **every thirty (30) days**. If he does not, this matter will be dismissed. Plaintiff must further notify the Court upon the conclusion of his criminal appeal and/or post-conviction proceedings. Once those proceedings are concluded, the Court will re-open the case and direct that service be made on Defendants.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #6) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to

institution staff, who will scan and e-mail documents to the Court.[4] If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The Court further advises Plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, Plaintiff must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **STAYED** pending the conclusion of Plaintiff's state court criminal proceedings;

**IT IS FURTHER ORDERED** that Plaintiff shall provide updates on the status of those proceedings on or before the **last day of each month**;

**IT IS FURTHER ORDERED** that Plaintiff shall notify the Court when those proceedings have concluded, and the manner in which they were concluded; and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall administratively close this action.

---

[4]The Prisoner E-Filing Program is mandatory for all inmates of Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Dated at Milwaukee, Wisconsin, this 14th day of May, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge